## JAMISON, Appellant v. INDUSTRIAL COMMISSION, Appellee.

Ohio Appeals, First District, Hamilton County.

No. 6261.   Decided May 3, 1943.

Mr. Henry P. Karch, Cincinnati, for appellant.

Mr. Thomas J. Herbert, Columbus, Mr. Robert E. Hall, Columbus, and Mr. Edward A. Schott, Cincinnati, for appellee.

### OPINION

By MATTHEWS, J.

The Industrial Commission denied the plaintiff's application for compensation on the ground that his injury had not arisen out of and in the course of his employment, and on appeal the Common Pleas Court sustained the defendant's motion for an instructed verdict at the close of counsel's opening statement to the jury on behalf of the plaintiff, overruled plaintiff's motion for a new trial and entered judgment for the defendant.   This appeal is from that judgment.

Counsel for appellee correctly states the issue raised by this appeal as follows: "The sole question involved is whether or not the plaintiff-appellant received an injury arising out of his employment."

As the judgment was rendered on the opening statement, which, for the purposes of this appeal is assumed to be true, we examine that statement for the factual basis of a decision.

We find this in the opening statement:

"* * * this action arose through an accident occurring on the 27th day of February, 1939, to this man here, Orlee Jamison, while he was in the employ of the Hoetker Coal Company. Now, the young man had been employed there for several years as a common laborer, using a shovel, shoveling coal from the cars, and on this particular day, February 27, 1939, he was occupying that labor position up until the evening when he was asked to serve as a night watchman during the absence of the regular night watchman. Now, he evidently had no experience as a night watchman. He had a conference with Mr. Hector and was shown the equipment the night watchman had for that purpose. In the desk drawer was a gun and a flash light in the office of the company down on Budd Street. Prior to that time this man, on the 9th day of February, married, and on this—after he went to work there after his marriage to this woman she had at different times during the day time taken lunch to him so that on this evening after he was engaged as night watchman—he had worked already for twelve hours practically up to that time, and she went over that evening at his request and brought his lunch to him, arriving there somewhere around eight o'clock or a little later, and while she was there and while it was raining, it was a dark evening and raining, and on these premises the proprietor had a lot of dogs, and he particularly instructed this man to look after those dogs and give them milk and if the dogs made any noise or barked he should go and see what the disturbance was, and while his wife was there with him that evening he was called out by a disturbance or noice from the barking dogs about three times. This is all in the record and will be read to you.

"Now the claimant's case is this, while he was employed there and while his wife was there he had occasion to go out three times to quell any disturbance or to see if any persons were approaching the property. It was a dark night and the first time he went out he was called out when he was eating a sandwich, he went out and his wife stayed there. Prior to his going out I think the record shows he told her about being a watchman and what the duties were and that he had a gun and a flash light, so he went out twice and the third time he went out he didn't take his gun with him but left it there and told his wife she should not use it unless somebody disturbed her, and he was gone a little longer than expected and she

was a little nervous and she heard a noise and saw someone approach and she didn't know who it was and she suddenly picked up the gun and fired, supposedly in the air, according to his instructions, and shot him through the body, the bullet going in on one side and out on the other side of his abdomen. It pierced the stomach and destroyed one of the kidneys which had to be removed, and also lacerated the liver."

Now there is no suggestion in this statement that the plaintiff's wife was on the premises at the request or with the knowledge of the employer. In bringing the plaintiff's lunch and staying with him during his watch she was performing no act for or on behalf of the employer. What she did was personal to her and the plaintiff. She was no part of the employer's establishment or its activities or environment to the hazards of which the plaintiff subjected himself by accepting employment. The plaintiff created whatever hazard there was by her presence which did not and would not have existed otherwise in his employment.

The plaintiff's duty was to protect his employer's property from trespassers and intruders from without, and any accidental injury from that source would be traceable to a hazard peculiar to the employment. But an injury from an agency on the premises brought there after his employment for purposes of his own cannot be said to have any causal relation to the employment. While the gun was there at the time of the employment it was simply the instrumentality. The cause of the plaintiff's injury was its intentional discharge by his wife.

We think the case falls within the principle of the case of **Highway Oil Co. v. State ex, 130 Oh St 175.** We quote the second paragraph of the syllabus:

"There is no causal connection between an employment and an accidental injury, and such injury does not result from or arise out of the employment, where an employee in the course of his employment as an attendant at a gasoline service station is injured by the accidental discharge of a firearm which he caused to be brought to the statution at the request of a fellow employee for self-protection, without the knowledge or acquiescence of the employer."

At pages 181 and 182 of the opinion it is stated:
"Causing the gun to be brought onto the employer's premises was Hurst's own unauthorized act, bearing no reasonable relationship to the services he was engaged to render. He thereby became subject to a danger of his own creation, to which the performance of his duties did not expose him; a danger not fairly within the anticipation of his employer; an added peril foreign to the contract of hire. Of course, if Hurst had been shot by robbers at the service

station in the course of his employment, quite a different question would be presented."

As is said in **Ashbrook v. Industrial Commission, 136 Oh St 115,** an injury arises out of the employment "when there is apparent to the rational mind upon consideration of all the circumstances a causal connection between the conditions under which the work is required to be performed and the resulting injury." The fatal defect in the plaintiff's position is that his injury was caused by his wife, an agency entirely foreign to the conditions under which he was required to perform his work. It did not arise out of the employment.

For these reasons, the judgment is affirmed.

ROSS, P. J., and HILDEBRANT, J., concur.